**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| LIFEBRITE HOSPITAL GROUP OF STOKES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, an Independent Licensee of the Blue Cross Blue Shield Association,<br><br>Defendant. | Case No. 18-293 |

## NOTICE OF REMOVAL

Defendant Blue Cross and Blue Shield of North Carolina, Inc. ("Blue Cross NC"), through counsel and pursuant to 28 U.S.C. §§ 1331, 1441, 1442 and 1446, files this Notice of Removal and asserts as follows:

1. On March 9, 2018, Plaintiff LifeBrite Hospital Group of Stokes, LLC ("LifeBrite" or "Plaintiff") filed this action in the Superior Court of Stokes County, North Carolina.

2. Defendant Blue Cross NC was served with the summons and complaint on March 15, 2018.

3. The Complaint alleges two counts "concerning the refusal of Blue Cross NC to compensate LifeBrite for covered services rendered to Blue Cross NC and/or its

affiliate's insureds." (*See* Compl. ¶¶ 3, 13-18 (attached hereto as Exhibit A).)

4. In Count I, Plaintiff alleges a claim for "breach of contract" based on Blue Cross NC's alleged failure to "process claims and reimburse LifeBrite for services rendered to its members" for dates of service on and after November 14, 2017, and "in excess of %15,490,440.00." (Compl. ¶¶ 11, 14.)

5. In Count II, Plaintiff alleges a claim for "unjust enrichment," alleging that Defendant "has received services from LifeBrite in excess of $25,000.00, to which it should be required to compensate LifeBrite for the reasonable value of those services." (Compl. ¶ 17.)

## GROUNDS FOR REMOVAL

6. This case is properly removed because the complaint raises substantial questions of federal law, in that portions of Plaintiff's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), and jurisdiction in this Court is thus proper under 28 U.S.C. § 1331.

7. In addition, this case is also properly removed pursuant to 28 U.S.C. § 1442(a)(1) because Blue Cross NC has been sued for actions taken as a person acting under a federal officer of an agency of the United States under color of such office.

## I. Federal Question Jurisdiction Due to ERISA Preemption

8. Jurisdiction in this Court is proper because portions of Plaintiff's claims are completely preempted by ERISA.

9. Although federal question jurisdiction ordinarily is governed by the well-

pleaded complaint rule, an exception to this rule is when Congress "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002). The effect of this exception is to convert what would ordinarily be a state claim into a federal claim. *Id.* A claim is subject to complete preemption under ERISA when: (i) the plaintiff "could have brought [its] claim under ERISA § 502(a)(1)(B)"; and (ii) "there is no other legal duty that is implicated by a defendant's actions." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004); *see also Kuthy v. Mansheim*, 124 F. App'x 756, 757 (4th Cir. 2004) (unpublished) (per curium).

10. Portions of Plaintiff's claims fall within the scope of ERISA. ERISA § 502 covers three types of claims: (i) claims to recover benefits due under the terms of the plan; (ii) claims to enforce rights under the plan; and (iii) claims to clarify rights to future benefits under the plan. *See* 29 U.S.C. § 1132(a)(1)(B). Here, at least one or more of the claims seek to recover benefits under the terms of an ERISA plan.

11. In determining whether a claim seeks benefits under an ERISA plan, courts distinguish between "right to payment" claims, which fall within the scope of ERISA, and "rate of payment" claims, which generally do not. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 (11th Cir. 2009). Plaintiff's Complaint covers all claims for "covered services rendered to BCBSNC and/or its affiliate's insureds" starting with dates of service of November 14, 2017. (Compl. ¶¶ 3, 11, 14, 17.) Based on a review of the claims from Plaintiff during this time period, Blue Cross NC

has determined that the claims at issue include numerous claims from members covered by ERISA group health plans. (*See* Decl. of Roger Purnell ("Purnell Decl.") at ¶¶ 12-13.)

12. Plaintiff's Complaint contends that amounts for claims that have not yet been paid because the claims "should be sent to the State where the lab specimen was drawn." (Compl. ¶ 11.) However, based on a review of the claims from Plaintiff during the time period at issue, in the vast majority of instances, Blue Cross NC has been unable to determine whether the claims are "medically necessary" or are otherwise for covered services. (Purnell Decl. ¶ 14.) Where those claims seek payment from ERISA Plans, those ongoing coverage determinations are necessarily based on application and interpretation of the underlying ERISA Plans in question. (*Id.*) In those instances, Plaintiff's claims are not predicated on a legal duty independent of ERISA. While Plaintiff asserts its breach of contract claim pursuant to the Network Provider Agreement between itself and Blue Cross NC, portions of the claims for payment are dependent upon the terms of and interpretation of the relevant ERISA plan.

13. The Network Participation Agreement between LifeBrite and Blue Cross NC obligated LifeBrite to render "Medically Necessary Covered Services" to Blue Cross Members. (Purnell Decl. ¶ 5 & Ex. 1 § 2.1.1; Compl. ¶ 9 & Ex. B). Blue Cross was then obligated to pay LifeBrite for "Covered Services provided to Members." (Purnell Decl. ¶ 6 & Ex. 1 § 4.1; Compl. ¶ 9 & Ex. B). Blue Cross NC retained responsibility for making judgments and decisions about whether services are "Covered Services" and payable. (Purnell Decl. ¶ 7 & Ex. 1 § 3.2.4.) Part of Blue Cross NC's decision regarding

whether services were "Covered Services" and thus payable involved deciding whether such services were "Medically Necessary" as "Covered Services" are then defined in the Network Participation Agreement as "the benefits and services, goods, equipment and supplies specified in the Benefit Plan to which Members are entitled in accordance with the terms and conditions thereof." (Purnell Decl. ¶ 9 & Ex. 1 § 1.7.) In short, Blue Cross NC, in determining whether LifeBrite rendered "Medically Necessary Covered Services" must interpret the terms and conditions of the underlying ERISA benefit plan. (Purnell Decl. ¶¶ 13-14); *see Conn. State Dental Ass'n*, 591 F.3d at 1353 ("[Plaintiffs'] claims stray from the boundaries of their Provider Agreements into ERISA territory by asserting improper denials of medically necessary claims . . . ."); *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 531-33 (5th Cir. 2009) (claims for breach of provider agreement may be preempted to the extent they involve claims denied in full for lack of coverage); *Kuthy*, 124 F. App'x at 758 ("Appellees' decision to deny coverage was based upon their interpretation of a provision in the insurance plan . . . [Plaintiff's] claim therefore falls within the scope of ERISA.").

14. Accordingly, for some subset of denied claims, LifeBrite has not yet been paid because Blue Cross NC has been unable to determine whether the claims are "medically necessary" or are otherwise "covered services" under the relevant ERISA Plan.

15. These claims directly implicate the "right to payment" rather than the "rate of payment," and thus fall within the scope of ERISA. *See Conn. State Dental Ass'n v.*,

591 F.3d at 1351 ("Because [plaintiffs] complain, at least in part, about denials of benefits and other ERISA violations, their breach of contract claim implicates ERISA."); *Kearney v. Blue Cross & Blue Shield of N.C.*, 233 F. Supp. 3d 496, 502-04 (M.D.N.C. 2017) (provider's breach of contract and other state-law claims, alleging Blue Cross NC's failure to pay for services rendered based on "medical necessity" determination, was properly removed because claims were completely preempted by ERISA). Plaintiff's Complaint makes it clear that Plaintiff is not seeking additional payment for claims that were partially paid—a "rate of payment" claim.

16. Plaintiff's claims are thus preempted, at least in part, and jurisdiction in this Court is proper.

## II. Federal Officer Removal Jurisdiction

17. Independent of federal question jurisdiction, the federal officer removal statute, 28 U.S.C. § 1442(a)(1), authorizes the removal of an action against "any officer (or person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office. 28 U.S.C. § 1442(a)(1). A defendant may remove a case under 28 U.S.C. § 1442(a)(1) if it establishes "(1) it is a federal officer or a person acting under that officer; (2) a colorable federal defense; and (3) the suit is for an act under color of office, which requires a causal nexus between the charged conduct and asserted official authority." *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209-10 (4th Cir. 2016) (quoting *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999)) (internal quotation marks omitted). The federal officer

removal statute is, like ERISA preemption, an exception to the well-pleaded complaint rule. *Id.* at 210.

18. Defendant Blue Cross NC may invoke the federal officer removal statute because the claims alleged by Plaintiff implicate: (a) Blue Cross NC's administration of the statutorily-created Service Benefit Plan, which is a health plan governed by the Federal Employee Health Benefits Act ("FEHBA") and sometimes alternatively referred to as the "Federal Employee Program" or "FEP," and (b) Blue Cross NC's administration of Medicare Advantage health plans. (*See* Purnell Decl. ¶¶ 15-18.)

A. Federal Officer Removal Based on the Service Benefit Plan

19. FEHBA "establishes a comprehensive program of health insurance for federal employees" and authorizes the Federal Office of Personnel Management ("OPM") "to contract with private carriers to offer federal employees an array of health care plans." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 682 (2006). One plan specifically described in FEHBA is the nationwide Service Benefit Plan. *See* 5 U.S.C. § 8903(1); (Purnell Decl. ¶ 15); *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1092 (10th Cir. 2015) (discussing the operation of the Service Benefit Plan, which is the same FEHBA plan at issue in this case).

20. To accomplish this goal, Congress vested OPM with broad discretion to establish insurance plans with many different insurers, which are known under FEHBA as "carriers." *See Muratore v. OPM*, 222 F.3d 918, 920 (11th Cir. 2000); 5 U.S.C. §§ 8901(7), 8902-03, 8913. All premiums are deposited initially into the Employees Health

Benefits Fund within the U.S. Treasury. 5 U.S.C. § 8909(a); *Helfrich*, 804 F.3d at 1092. Carriers like Blue Cross NC do not receive those premiums directly, but rather, the premiums are placed into a special letter of credit account within the federal Treasury fund. Carriers draw directly from the letter of credit account in the Treasury fund to pay for benefit claims and allowable administrative expenses. 48 C.F.R. § 1632.170(b)(1), § 1652.232-71(d); *Helfrich*, 804 F.3d at 1092. Any premiums that are not used to pay benefits and administrative expenses remain the property of the government. *See Helfrich*, 804 F.3d at 1092.

21. FEHBA contains a broad preemption provision that states: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to the health insurance or plans." 5 U.S.C. § 8902(m)(1) (2011) (amended by the Federal Employees Health Care Protection Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363, 2366 (1998)). "[U]nder § 8902(m)(1) as it now reads, state law – whether consistent or inconsistent with federal plan provisions – is displaced on matters of 'coverage or benefits.'" *Empire*, 547 U.S. at 686. The Supreme Court recently emphasized that the phrase "relate to" in § 8902(m)(1) "'express[es] a broad pre-emptive purpose'" and is "notably 'expansive [in] sweep.'" *Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1197 (2017) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 384 (1992)) (alterations added in *Nevils*). The Supreme Court in *Nevils* also found that a

broad reading of § 8902(m)(1) was appropriate in light of FEHBA's "statutory context and purpose":

> FEHBA concerns benefits from a federal health insurance plan for federal employees that arise from a federal law in an area with a long history of federal involvement. Strong and distinctly federal interests are involved, in uniform administration of the program, free from state interference, particularly in regard to coverage, benefits, and payments.

*Id.* (internal quotation marks and citations omitted).

22. For the time period covered by this lawsuit, Blue Cross NC has received and administered FEP claims from LifeBrite for allegedly providing laboratory services to individuals who are enrollees in the FEHBA-governed Service Benefit Plan. (Purnell Decl. ¶ 15.)

23. LifeBrite has alleged that Blue Cross NC has failed to pay LifeBrite for claims submitted for services rendered to individuals. Blue Cross NC has determined that some of these individuals for which Plaintiff seeks payment are enrollees in the FEHBA-governed Service Benefit Plan. (*Id.*) Thus, Blue Cross NC may remove this case pursuant to the federal officer removal statute. *See Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1256 (9th Cir. 2017) (Blue Cross Blue Shield entity administering FEHBA plan properly removed case pursuant to § 1442(a)(1)); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224 (8th Cir. 2012) (same); *Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross & Blue Shield of Fla, Inc.*, No. 03-15664, 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005) (same); *Inspire Malibu v. Anthem Blue Cross Life &*

*Health Ins. Co.*, No. CV 16-5229, 2016 WL 5746337, at *4-6 (C.D. Cal. Sept. 30, 2016) (same); *Bell v. Blue Cross & Blue Shield of Okla.*, No. 5:14-CV-05046, 2014 U.S. Dist. LEXIS 155723 (W.D. Ark. Nov. 3, 2014) (same); *Ala. Dental Ass'n, v. Blue Cross & Blue Shield of Ala., Inc.*, No. 2:05-cv-01230-MEF, 2007 U.S. Dist. LEXIS 685, at *21-25 (M.D. Ala. Jan. 3, 2007) (same).

24. Blue Cross NC satisfies the first requirement of federal officer removal because "[a] health plan insurer contracting with a government agency under a federal benefits program is considered a 'person acting under' a federal officer." *Anesthesiology Assocs. of Tallahassee*, 2005 WL 6717869, at *2 (*quoting Peterson v. Blue Cross/Blue Shield of Tex.*, 508 F.2d 55, 56–58 (5th Cir. 1975)) (finding § 1442(a)(1) jurisdiction over a claim by a physician against a health insurer operating under Medicare).

25. Blue Cross NC likewise satisfies the causal nexus requirement for federal officer removal because it is being sued for acts that "occurred because of what they were asked to do by the Government. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137-38 (2d Cir. 2008); *see also Jacks*, 701 F.3d at 1233 (In establishing a health benefits program for federal employees, "OPM has direct and extensive control over these benefits contracts under the FEHBA."). For claims submitted by Plaintiff for individuals enrollees in the FEHBA-governed Service Benefit Plan, Blue Cross NC's ongoing coverage determinations are necessarily based on

application and interpretation of the applicable FEHBA Service Benefit Plan. (Purnell Decl. ¶ 16.)

26. As to the third requirement, Blue Cross NC has several colorable federal-law defenses. The federal officer removal statute does not require Defendant to prove a defense is meritorious; instead, all that is required is to show that a defense is colorable. *Jacks*, 701 F.3d at 1233. These defenses include preemption, sovereign immunity, and displacement by federal common law.

27. First, Plaintiff's state-law claims are preempted by FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1), which provides that the terms of FEHBA contracts concerning benefits and payments shall supersede state law. *See* 5 U.S.C. § 8902(m)(1); *see also Gonclaves*, 865 F.3d at 1249 ("[W]e have little trouble concluding that the Blues' assertion that § 8902(m)(1) preempts any state law supporting [Plaintiff's claims] is a colorable federal defense."); *Empire*, 547 U.S. at 686; *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390 (9th Cir. 2002).

28. Second, sovereign immunity is also a colorable federal defense because any funds that would be used to pay LifeBrite for its services would come directly from the federal Treasury. Many courts have dismissed state-law claims against a Service Benefit Plan administrator on sovereign immunity grounds. *See Inspire Malibu*, 2016 WL 5746337, at *6 (dismissing provider's state law claims against Service Benefit Plan administrator on sovereign immunity grounds);

*Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1070-71 (S.D. Cal. 2016) ("Any recovery against Blue Shield in this case would come from funds in the federal treasury. The United States cannot be sued without its consent and the United States has not waived sovereign immunity in this case for a direct action by a provider."); *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2014 WL 4930443, at *9-10 (E.D. La. Sept. 30, 2014) (dismissing state-law claims against Service Benefit Plan administrator on sovereign immunity grounds); *Mentis El Paso, LLP v. Health Care Serv. Corp.*, 58 F. Supp. 3d 745, 765 (W.D. Tex. 2014) (same); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587 (N.D. Tex. 2014) (same); *see also Omega Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 592 F. App'x 268, 272 (5th Cir. 2014); *Jacks*, 701 F.3d at 1235.

29. Third, Plaintiff's state-law claims are also displaced by federal common law, which governs the federal contract at the heart of this case. *See Helfrich*, 804 F.3d at 1095-1104; *Jacks*, 701 F.3d at 1235. The court in *Jacks* found each of these three defenses to be colorable for purposes of the federal officer removal statute. *Jacks*, 701 F.3d at 1235.

B. Federal Officer Removal Based on Medicare Plans

30. Plaintiff's claims are also removable under the federal officer removal statute because they implicate Blue Cross NC's administration of Medicare Advantage plans.

31. Blue Cross NC qualifies as a person acting under the direction of a federal agency or officer because it administers governmental health plans. Blue Cross NC received and administered claims from Plaintiff for providing services to individuals who are beneficiaries of such Medicare plans. (*See* Purnell Decl. ¶ 17.) Blue Cross NC has determined that some of individuals for which Plaintiff seeks payment are individuals who have selected coverage under Blue Cross NC's Medicare Advantage plans. (*Id.*)

32. Blue Cross NC is specifically authorized by its contracts to assist CMS in carrying out the government's obligation to provide Medicare benefits to beneficiaries. (*See id.*); *see e.g.*, *Assocs. Rehab Recovery, Inc. v. Humana Med. Plan., Inc.*, 76 F. Supp. 3d 1388, 1391 (S.D. Fla. 2014) (holding that defendant satisfied the requirement of acting under the direction of a federal agency or officer because "Defendant contracted with CMS to administer Medicare benefits on behalf of the federal government for Medicare enrollees in the Medicare Advantage plans offered by Defendant . . . . Accordingly, Defendant was acting on behalf of CMS when it denied the Medicare benefits at issue here.").

33. The causal nexus requirement is satisfied for the Medicare plans because Plaintiff seeks additional reimbursement for claims that were paid according to federal health plans. Without Blue Cross NC's contract with CMS, Blue Cross NC would not have administered those claims. For the claims by Plaintiff for individuals who have selected coverage under Blue Cross NC's Medicare Advantage plans, Blue Cross NC's ongoing coverage determinations are necessarily based on application and interpretation of the applicable Medicare Advantage plan. (Purnell Decl. ¶ 18); *see Einhorn v. Careplus Health Plans, Inc.*, 43 F. Supp. 3d 1268, 1270 (S.D. Fla. 2014) (finding causal nexus to exist because "[t]he extent to which federal law imposes certain requirements upon [defendant] as a Medicare Advantage plan and whether it may provide any corresponding protection from liability, are issues of federal law") (internal quotations omitted).

34. Blue Cross NC also has a colorable federal defenses of express preemption for the Medicare plans. 42 U.S.C. § 1395 expressly codifies that Medicare regulations shall supersede any state-law regulations. *See Do Sung Uhm v. Humana Inc.*, 620 F.3d 1134, 1148 (9th Cir. 2010) (state-law claims against insurer alleging failure to provide benefits were preempted by Medicare Act).

35. For these reasons, Blue Cross NC is entitled to remove this action.

Respectfully submitted, this the 13th day of April, 2018.

/s/ *Chad D. Hansen*
Chad D. Hansen, NCSB # 32713
Elizabeth L. Winters, NCSB # 44918
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Tel: (336) 607-7300
Fax: (336) 607-7500

*Counsel for Blue Cross and Blue Shield of North Carolina*

CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically served the foregoing **DEFENDANT'S NOTICE OF REMOVAL** upon counsel of record by depositing a copy thereof in the United States mail, postage prepaid and addressed as follows:

Michael R. Bennett, Esq.
BENNETT & WEST, PLLC
P.O. Box 775
607-D Main St.
King, NC 27021
Tel: (336) 983-3177
Fax: (336) 983-8626

*Counsel for Plaintiff*

This the 13th day of April, 2018.

/s/ Chad D. Hansen
Chad D. Hansen, NCSB #32713
Elizabeth L. Winters, NCSB # 44918
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Tel: (336) 607-7300
Fax: (336) 607-7500

*Counsel for Defendant*